**Slip Op. 00-77**

## UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————————————————

POHANG IRON AND STEEL CO., LTD.,　　　　　:
POHANG COATED STEEL CO., LTD., AND　　　 :
POHANG STEEL INDUSTRIES CO., LTD.,　　　 :

　　　　　　　　Plaintiffs,　　　　　　 :

　　　　　　　　v.　　　　　　　　　　 :

　　　　　　　　　　　　　　　　　　　:　Consol. Court No.
THE UNITED STATES,　　　　　　　　　 :　　98-04-00906

　　　　　　　　Defendant,　　　　　　 :

　　　　　　　　and　　　　　　　　　 :

　　　　　　　　　　　　　　　　　　 :　PUBLIC VERSION
NATIONAL STEEL CORPORATION; U.S. STEEL :
GROUP - A UNIT OF USX CORPORATION;　　 :
INLAND STEEL INDUSTRIES, INC.;　　　　 :
BETHLEHEM STEEL CORPORATION; AND LTV　 :
STEEL CO., INC.,　　　　　　　　　　　:

　　　　　　　　Defendant-Intervenors.　:

NATIONAL STEEL CORPORATION, <u>et al.</u>,　 :

　　　　　　　　Plaintiffs,　　　　　　 :

　　　　　　　　v.　　　　　　　　　　 :

THE UNITED STATES,　　　　　　　　　 :

　　　　　　　　Defendant,　　　　　　 :

　　　　　　　　and　　　　　　　　　 :

POHANG IRON AND STEEL CO., LTD., <u>et al.</u>,:

　　　　　　　　Defendant-Intervenors,　:

　　　　　　　　and　　　　　　　　　 :

UNION STEEL MANUFACTURING CO. LTD.,　　:

　　　　　　　　Defendant-Intervenor.　 :

————————————————————————————————:

[Antidumping duty remand determination affirmed in part and remanded in part.]

Dated:  July 6, 2000

     Akin, Gump, Strauss, Hauer & Feld, LLP (Sukhan Kim, Spencer S. Griffith, J. David Park, and Sydney H. Mintzer) for the POSCO Group.

     David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michele D. Lynch), Linda S. Chang, and Bernd G. Janzen, Office of the Chief Counsel for Import Administration, Department of Commerce, of counsel, for defendant.

     Dewey Ballantine LLP (Michael H. Stein, Bradford L. Ward, Jennifer Danner Riccardi and Andrew J. Conrad) for National Steel Corporation, et al.

     Kaye, Scholer, Fierman, Hays & Handler, LLP (Donald B. Cameron, Julie C. Mendoza and Paul J. McGarr) for Union Steel Manufacturing Co., Ltd.

## OPINION

**RESTANI, Judge:** This matter is before the court following remand.  See Final Results of Redetermination Pursuant to Court Remand: Pohang Iron and Steel Co., Ltd. v. United States, Consol. Ct. No. 98-04-00906 (Feb. 22, 2000) [hereinafter "Remand Results" or "RR"].  The court ordered the United States Department of Commerce ("Commerce" or "the Department") to explain or reconsider (1) its determinations

that the Posco Group's[1] U.S. sales were constructed export price ("CEP") sales as opposed to export price ("EP") sales, (2) U.S. indirect selling expenses for the Posco Group, and (3) Union Steel Manufacturing Co., Ltd.'s ("Union") claim of free U.S. warehousing for one verification observation. Pohang Iron and Steel Co. v. United States, No. 98-04-00906, 1999 WL 970743, at *19 (Ct. Int'l Trade Oct. 20, 1999) [hereinafter "Pohang I"].  Familiarity with the court's prior opinion herein is presumed. See id.  The issues will be addressed in reverse order.

## Jurisdiction and Standard of Review

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1994).  In reviewing final determinations in antidumping duty investigations and reviews, the court will hold unlawful those agency determinations which are unsupported by substantial evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B) (1994).

---

[1]  The plaintiffs herein, Pohang Iron and Steel Co., Ltd. ("POSCO"), Pohang Coated Steel Co., Ltd. ("POCOS") and Pohang Steel Industries Co., Ltd. ("PSI") are collectively referred to as the "POSCO Group".

**Discussion**

I.   Union Warehousing Expense

Although Commerce complains mightily that the court has required an unreasonable amount of verification activity or evidentiary support for its conclusion that Union had no warehousing expense for a particular sale, the court disagrees.  See RR at 17-20 & 46.  The particular aspect of the verification at issue involved a very small sample. Pohang I, 1999 WL 970743, at *15.  In such a situation, the individual observations are important.  It was the verifiers' obligation to state their conclusions accurately, whether based on oral statements or documentary evidence.  Further, they needed to include in the record enough of a trail for the court to determine if their conclusions were supported.

In this case, a domestic industry participant discovered a disconnect in the verification report.  Id. at *16.  It was up to the parties to resolve this issue by reference to the record the first time the issue was presented to the court. The explanation provided at that time was incomplete and partially incorrect.  Id. at *18.  On remand, review of the record revealed that a different Union sales contractual arrangement from the one originally discussed applied to the

observation at issue, Observation 83.[2]  RR at 45.  Either the
company's statement to the verifier or the verifier's report
of it contained errors or ambiguities.  Id. at 44-45.

When the supporting documentation reveals contradictions
or commercially nonsensical practices in a respondent's
explanations, the verifier cannot simply accept them and move
on, as Commerce seems to assert.  See Consolidated Edison Co.
v. NLRB, 305 U.S. 197, 229 (1938) (finding that substantial
evidence means "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion").  In any
case the ambiguity has now been resolved by reference to sales
information of record which is discussed in confidential
footnote 2.  As the court found no problems with the rest of
the verification as to warehousing expenses, Commerce's
determination on this issue is now sustained.

II.  POSCO Group's U.S. Indirect Selling Expenses

Because the POSCO Group, adhering to its position that
use of CEP information was not appropriate, specifically
declined on at least two occasions to provide information on

---

[2] The contract reviewed by Commerce with respect to
observation 83 apparently was between [    ] and [    ], a Union
customer.  RR at 45.  The Union sales contract terms were
[    ].  Presumably Union would incur no warehousing expenses
in such a situation.

U.S. indirect selling expenses, Commerce used facts available. Pohang I, 1999 WL 970743, at *14. The court has already approved the use of facts available for POSCO, if an adjustment is necessary in U.S. indirect selling expenses to account for an interest expense. See id. at *15. POSCO asserts that such an adjustment is neither necessary nor permissible. It states that Commerce improperly changed its methodology after the final results had issued to include the interest expense, and that Commerce did not simply correct a ministerial error. Id. at *14. The court found Commerce's explanation wanting and remanded the issue. Id. at *15.

Commerce has now embraced the suggestion from the court that perhaps its indirect selling expense calculation involved a partial adverse facts available selection. Id. at *15, see also Remand Results, at 14-17. Indeed, the court has no problem with that selection because there is no reason to believe POSCO could not have complied with Commerce's request, and POSCO's decision not to comply was purposeful. Accordingly, use of adverse facts available was permissible under 19 U.S.C. § 1677e(b) (1994). The threshold problem, however, is that Commerce is permitted to change the indirect expenses calculation after the final results are issued only if Commerce originally calculated such expenses incorrectly

because of ministerial error.  See 19 U.S.C. § 1675(h) (1994)

(ministerial errors to be corrected within a reasonable time

after final determinations are issued).

On remand, Commerce clarified that it intended to include

a number of items in indirect expenses even though under

normal circumstances it might exclude those items in order to

avoid double counting of expenses already counted, e.g., as

direct expenses.  RR at 40-42.  Because POSCO did not submit

specific CEP indirect expense information, Commerce alleges

that it cannot be certain that double counting would occur.

Id. at 41-42.  Therefore, this alleged uncertainty with

respect to double counting caused Commerce, in fulfilling the

adverse inference it had drawn, to include the interest

expense at issue in indirect selling expenses.  Id.  Commerce,

however, failed to program its computer accordingly.  Id.  The

type of correction Commerce describes is a ministerial error

correction.  See 19 C.F.R. § 351.224(f) (1999) (noting that

arithmetic function is ministerial error).

As to a related adjustment, in its remand determination

Commerce failed to clarify expressly, as instructed by the

court, why it rejected POSCO's own claim of ministerial error

as to bank charges and commissions adjustments to indirect

sales expenses.  RR at 37.  The court nevertheless surmises

from Commerce's explanation as to interest that certain commissions and bank charges also were included in the original final results calculation because of Commerce's belief that there was a lack of POSCO information demonstrating double counting.  Thus, Commerce concluded no post-final results ministerial error change in POSCO's favor was warranted.[3]

It is probably reasonable in a facts available situation, and clearly so in an adverse facts available setting, to put the risk of double counting on the delinquent party.  This would be the normal result of drawing an adverse inference. POSCO alleges, however, that there was adequate data in the record to make <u>clear</u> that Commerce's method double counted. Commerce cannot use information which is known to be incorrect.  <u>D & L Supply Co. v. United States</u>, 113 F.3d 1220, 1223 (Fed. Cir. 1997).  Thus, the question now presented to the court is whether the record demonstrates that Commerce

---

[3]  In Commerce's supplemental brief, it confirms that the treatment in methodology as to claimed corrections for both interest and bank charges and commissions is consistent, as the court surmised.  Commerce's Supp. Br. at 2 (May 17, 2000). Because Commerce intended to include bank charges and commissions there was no ministerial error which could be corrected post-final results as to commissions and bank charges, and POSCO's claim fails.  <u>Ministerial Analysis Memorandum</u> (Apr. 15, 1998), at 3, P.R. Doc. 216, Def.'s <u>Pohang I</u> Public App., Ex. 18, at 2.

CONSOL. COURT NO. 98-04-00906

incorrectly included POSCO's interest expenses in the U.S. indirect selling expenses figure.[4]

First, Commerce normally makes a direct selling expense adjustment based on an <u>imputed</u> credit expense for individual sales, which it did here.  The imputed credit expense, which is not a separate actual expense figure, is excluded from the total interest expense figure used to calculate indirect selling expenses.  <u>New Minivans from Japan</u>, 57 Fed. Reg. 21,937, 21,956-57 (Dep't Commerce 1992) (final LTFV det.) (excluding imputed credit expense on individual sales as part of indirect selling expenses); <u>see also</u> <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany</u>, 56 Fed. Reg. 31,692, 31,721 (Dep't. Commerce 1991) (final results of antidumping duty admin. rev.) (Commerce "reduced interest expense on the firm's books for a portion of [imputed credit] expense . . . to avoid double-counting.").  The court sees no reason which would justify this known double counting here.  No specific additional information from POSCO is necessary to eliminate this particular double counting.  Nonetheless, the court

_____

[4]     The court does not hold that such specific partial adverse facts available data must be used, but Commerce chose this method and must follow all facts available procedures that flow from its choice.

accepts Commerce's explanation that it may make some indirect selling expense adjustment with respect to interest expenses because it lacks the information to determine if the imputed credit deduction covered all sales-related interest expenses. See RR at 42. Accordingly, while here the imputed credit figure must be subtracted from the total interest figure, interest expenses may generally be included in the indirect selling expense adjustment where the respondent has not provided full CEP expense data.

Second, POSCO asserts that the interest figure largely relates to non-subject merchandise, that Commerce's allocation of interest expenses between subject and non-subject is incorrect, and that interest expenses should be allocated based on the relationship that a specific non-subject merchandise business asset bears to total assets.[5] Commerce is not required to use this method of allocation if it is already allocating interest expenses on another acceptable subject - non-subject merchandise basis.

The problem is that the ratio of subject merchandise revenue to total revenue may not account for the revenue generated by the separate business asset because this figure

---

[5] The specific business asset is [    ]. POSCO's Comments on Remand at 11-16.

may not be included in the POSCO group's balance sheets.  See
Commerce's Supp. Br. at 12-13 (May 17, 2000).  Commerce states
it cannot tell which interest expenses are related to the
separate business asset and cannot deduct such interest
expenses from the total to be allocated.  Thus, it implies
that it accepts the possibility that its allocation may be
distortive.

Had POSCO submitted all the data required by Commerce,
the court might be sympathetic to its arguments that Commerce
does not need any more information because it can allocate on
an asset basis, and that Commerce never requested the data.
Had Commerce received all the information it requested, it
might have been led to ask for this additional data.  It also
seems improper under adverse inference circumstances to
require Commerce to abandon its normal allocation methods
because POSCO's methods might be better.  AK Steel Corp. v.
United States, 988 F. Supp. 594, 606 (Ct. Int'l Trade 1997)
("[T]he [c]ourt's role is not to determine whether the
information chosen was the 'best' actually available." )
(quotation omitted), aff'd 1999 U.S. App. Lexis 15023 (Fed.
Cir. 1999). Further, because of the odd financial structure at
issue and POSCO's lack of cooperation, the court cannot say
that Commerce is incorrect in focusing on debt financing as

opposed to taking a broader view of financing.  Accordingly,

Commerce is not required to allocate the interest expense on

the basis of the relationship of the separate business asset

to total assets.

Third, POSCO objected that the normal practice of

deducting interest income from interest expenses was not

followed.  POSCO did not explain its objections in terms of

specific calculations, clarify whether only short term

interest was at issue or whether interest income was deducted

from imputed credit.  Despite Commerce's lack of response on

this point, the court finds POSCO's objection insufficient.[6]

Finally, the court finds arguments with respect to

freight expenses and other periods of review irrelevant to

this matter.  Accordingly, for purposes of the indirect

selling expenses adjustment, Commerce shall adjust the

interest expense figure removing previously deducted imputed

credit expenses.

III.     Use of Constructed Export Price for POSCO Group's

U.S. Sales

All parties agree that the Federal Circuit's decision in

---

[6]     Only in its response to Commerce's supplemental
brief did POSCO make its objection to the remand results on
this issue with any specificity.  This was too late.

AK Steel Corp. v. United States impacts this case.  203 F.3d 1330 (Fed. Cir. 2000).  It involves the same parties, the same product, and the same commercial patterns.  In AK Steel, the Federal Circuit rejected Commerce's longstanding three-part test for selecting EP versus CEP treatment for U.S. sales.  Id. at 1339-40.  The court held that the additional words of 19 U.S.C. § 1677a (1994), "outside the United States" and "by a seller affiliated with the producer" in the respective definitions of EP and CEP are significant.  Id. at 1337.  It found that the additional words invalidated the prior administrative practice; whereas this court, in the absence of contrary legislative history, had recognized the additional words to be mere clarification.  Compare AK Steel, 203 F.3d at 1338-39, with AK Steel Corp. v. United States, 34 F. Supp.2d 756, 762 (Ct. Int'l Trade 1998), aff'd in part, rev'd in part by 203 F.3d 1330.  The Court of Appeals declared the statute wholly unambiguous and unambiguously eliminated Commerce's three-part test to determine whether sales by domestic affiliates rendered the sales subject to EP or CEP treatment.  AK Steel, 203 F.3d at 1337-40.

     No one has asserted that the U.S. sales at issue were not made pursuant to contracts signed by the U.S. affiliates and the U.S. customers in the United States.  Under AK Steel's

geographic approach, the sales are subject to CEP treatment.[7]
That is all that remains of this issue and further remand, as
the domestic parties request, would serve no purpose in this
case.


### Conclusion

This matter is remanded to correct the indirect selling
expenses adjustment as stated in this opinion.  Remand is due
within 30 days.  The parties may object within 11 days
thereafter.


_____
Jane A. Restani
Judge


Dated: New York, New York

This 6th day of July, 2000.

---

[7]  The court does not mean to imply that a U.S. affiliate
and a U.S. customer could sign a contract in the Barbados to
avoid CEP treatment.  If both contractual parties are U.S.
entities operating in the U.S. under AK Steel, the sale will
be a CEP sale.  See AK Steel, 203 F.3d at 1339-40.